ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Lockheed Martin Aeronautics Company | )   ASBCA No. 62209 |
| | ) |
| Under Contract No. FA8625-07-C-6471 | ) |

APPEARANCES FOR THE APPELLANT:   Stephen J. McBrady, Esq.
   J. Chris Haile, Esq.
   Skye Mathieson, Esq.
   Michelle D. Coleman, Esq.
   John Nakoneczny, Esq.
    Crowell & Moring LLP
    Washington, DC

APPEARANCES FOR THE GOVERNMENT:   Jeffrey P. Hildebrant, Esq.
    Deputy Chief Trial Attorney
   Caryl A. Potter, Esq.
   Lawrence M. Anderson, Esq.
   Kyle E. Gilbertson, Esq.
    Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE PAGE ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

This appeal, made under the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109 (CDA), arose from the $143,529,290 claim brought by Lockheed Martin Aeronautics Company (Lockheed Martin, LMA, LM, appellant, or contractor) against the Air Force (Air Force, USAF, government, or respondent). The underlying contract required the contractor to provide a set of upgrades to certain C-5 Galaxy aircraft. Appellant seeks to recover for costs associated with allegedly excessive "over and above" (O&A) work for particular airplanes and cumulative impacts based upon the "measured mile" legal theory. This decision addresses the government's motion for summary judgment (gov't mot.) and appellant's six cross-motions for summary judgment,[1] which focus upon whether LMA's October 15, 2018 claim was timely. We grant appellant's 2nd and 3rd cross-motions,[2] but emphasize that we do not reach the merits of its claim.

---

[1] Lockheed Martin's first through sixth cross-motions are identified as its 1st cross-motion, 2nd cross-motion, etc.

[2] The Board previously granted appellant's motion for partial summary judgment and struck the government's affirmative defense of laches; *see Lockheed Martin Aeronautics Co.*, ASBCA No. 62209, 21-1 BCA ¶ 37,886. The Board on

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION</u>

*The Contract*

1.  On April 30, 2007, the Air Force awarded Contract No. FA8625-07-C-6471, the "Reliability Enhancement and ReEngining Program" (RERP) to Lockheed Martin (R4[3], tab 3).  The contractor was required to provide a set of upgrades to each of 49 government-owned C-5 Galaxy aircraft.  This included the installation of new CF6-80C2 commercial engines and other enhancements to subsystems and major components; the work was done under mostly fixed-price contract line items (CLINs). (*Id*. at 3-13)  The C-5 Galaxy is the largest military transport aircraft in the United States government's fleet (complaint ¶ 10).

2.  The 49 RERP aircraft to be reworked were informally designated by the parties as P-1 through P-49 (Joint Stipulation of Fact (JSF) 1).[4]  These aircraft were grouped into seven lots comprised of varying numbers of planes for the RERP work. The 21 aircraft at issue in this appeal are aircraft P-7 through P-27; these were part of Lots 3, 4, and 5.  (R4, tab 2 at 3 n.1; JSF 2)

3.  The total amount of the contract was "NTE [not to exceed] $23,000,000" (R4, tab 3 at 2).  The contract incorporated by reference Federal Acquisition Regulation (FAR) 52.233-1, DISPUTES (JUL 2002) – ALTERNATE I (DEC 1991) (*id*. at 35).  It also contained FAR 52.243-01, CHANGES – FIXED-PRICE (AUG 1987), which applied "to Firm-Fixed-Price CLIN(s), Fixed-Price Incentive (Firm Target) CLIN(s) only" as well as FAR 52.243-03, CHANGES – TIME-AND-MATERIALS OR LABOR-HOURS (SEP 2000), which applied "to Time-and-Materials [T&M] CLIN(s) only" (*id*. at 36).

---

October 26, 2021 granted appellant's third motion to compel; *see Lockheed Martin Aeronautics Co*., ASBCA No. 62209, 21-1 BCA ¶ 37,891.  Although the Board finds adequate evidence in the existing record to decide the instant motions, the latter decision should facilitate a more amicable resolution of the parties' discovery disagreements.

[3] References to "R4" indicate submissions included in the government's Rule 4 file. Those to "app. supp. R4" designate those documents furnished by the appellant.

[4] The JSF were proposed findings presented in the government's motion for summary judgment (*see* gov't mot. at 1-8).  In its opposition and cross-motions for summary judgment (app. opp'n and mot.), Lockheed Martin stated that, for purposes of its 1st-cross-motion, it "accepts as true and adopts the factual (non-legal) assertions in [the] Air Force['s] 'Undisputed Material Facts'" at "¶¶ 1-3, 5-6, and 8-20, as set forth" in the government's motion (*id*. at 11).  We treat these agreed-upon proposed findings as joint stipulations of fact, identify the JSF by the paragraph number used in the government's motion, and adopt these JSF as our findings to the extent we determined these are supported by the record.

4.  The contract included the full text of clause B036 CONTRACT TYPE:

TIME-AND-MATERIALS (FEB 1997) (TAILORED):

(a)  The Contractor shall furnish at the hourly rates stated below, all necessary and qualified personnel, managing and directing the same to complete all T&M CLINS within the performance period specified in Section F.  In performance of these CLIN(s), Contractor shall be reimbursed for direct labor (exclusive of any work performed in an unpaid overtime status) at the hourly rates listed in Section J as an attachment.

CATEGORIES HOURLY RATE

Rates will be established each year and incorporated into the contract as an attachment.

(b)  For the purposes of the clause of this contract entitled "Payments Under Time-and-Material and Labor-Hour Contracts," the total ceiling price of the CLIN(s) specified in paragraph (a) above is $0.00.  *Applies to [T&M] CLIN(s) only.*

(R4, tab 3 at 14)

5.  Contract clause FAR 52.243-07, NOTIFICATION OF CHANGES (APR 1984) provided in ¶ (b) that the "Number of calendar days is (insert 30 for RDSS/C) '30 days.'"  Although the contract incorporated this clause by reference, when this paragraph is read in full with the insertion, it provides in relevant part:

(b)  *Notice.*  The primary purpose of this clause is to obtain prompt reporting of Government conduct that the Contractor considers to constitute a change to this contract. Except for changes identified as such in writing and signed by the Contracting Officer [CO], the Contractor shall notify the Administrative Contracting Officer [ACO] in writing promptly, within [30] calendar days from the date that the Contractor identifies any Government conduct (including actions, inactions, and written or oral communications) that the Contractor regards as a change to the contract terms and conditions.

(R4, tab 3 at 36)

3

6.  Contract Modification No. P00178, which has an effective date of November 6, 2012, did not increase the contract price (R4, tab 7 at 1). The modification contained the following release of claims by the contractor:

> 3.  This Supplemental Agreement constitutes a full and equitable adjustment between the Government and the Contractor arising out of or in connection with all C-5 RERP Production Schedule impacts, including the pylon sheer plate, improperly manufactured tower fitting, LM Aero manufacturing manning needs, etc., to the date of this Supplemental Agreement execution except for the issues associated with the Bucket Engineering Change Proposal (ECP) 12-00012A, that LM Aero is preparing. The "Bucket ECP" will address the cost impact of those issues; however the Contractor will not seek any further adjustments to the C-5 RERP Production Schedule. Once fully executed, the "Bucket ECP" (ECP 12-00012A) effort and this Supplemental Agreement (P00178) will constitute a full and equitable adjustment between the Government and the Contractor and release all parties from liability under the contract for further claims or equitable adjustments arising out of or in connection with any past legacy issues, runway closure, the aircraft cut wire, DCMA [Defense Contract Management Agency] flight crew availability, and/or DCMA additional inspection requirements in addition to the issues discussed in Paragraph 1 of this contract modification.

(*Id*. at 20-21) (underlining added)

7.  Modification No. P00178 was a supplemental agreement with the primary purpose of rebaselining the RERP production and delivery schedule for Lot 2, aircraft 2 (P-3) through Lot 7, aircraft 11 (P-49), with no change in contract price (R4, tab 7 at 1, 3). Other than the specific changes set forth in Modification No. P00178, the parties expressly agreed that "All other contract terms and conditions remain unchanged and in full force and effect as a result of this modification" (*id.* at 3; *see also* JSF 19). We find that appellant's release of claims in this modification was retrospective to (and inclusive of) November 6, 2012.

8.  In addition to fixed-price RERP modernization work, the contract also required Lockheed Martin to perform O&A repair work for the aircraft under other CLINs, which were entitled "Rapid Repair and Response" or "R3." This work is shown in CLINs 1005, 2005, 3005, and 4005 (R4, tab 3 at 6, 9, 11, 13). O&A repair work was performed on a T&M basis until April 25, 2013. Thereafter, it was done on

a cost-plus-fixed-fee [CPFF] basis pursuant to Contract Modification No. P00182. (R4, tab 10; JSF 3)

9. The contract's "Statement of Work (SOW)" for the "Low Rate Initial Production (LRIP) for the C-5M" efforts for Lots 1, 2, 3, and 4 is dated April 30, 2007 (R4, tab 3 at 1, 73). The SOW provided at ¶ 3.1.2:

> 3.1.2 Aircraft Modification
>
> The Contractor shall provide all necessary facilities and services required to modify the C-5 aircraft to the C-5M configuration in accordance with this Statement of Work. Systems, processes and staffing requirements used to build the SDD[5] aircraft shall form the baseline for the first production vehicle. Improvements and changes to systems, processes, and staffing requirements shall be incorporated as required to ensure conformity to the technical baseline as defined in Section H, Clause H100.
>
> The Contractor shall maintain a Manufacturing Plan that reflects the C-5M work flow. <u>Any work required to bring the aircraft to flight worthiness that is beyond the scope of this contract shall be accomplished on a Rapid Repair & Response (R3) basis, in accordance with the R3 clause, H106, or other mutually agreeable contractual arrangement.</u>

(*Id*. at 75) (underlining added)

10. The original contract did not contain a "Lot 5" (*see*, *e.g.*, R4, tab 3 at 5-13). In bilateral Contract Modification No. P00166 dated October 19, 2012 (app. opp'n and mot. at 73-87), the parties "incorporate[d] by reference, Contract Change Proposal (CCP) 11-00159, C-5 RERP Lot 5 Installations and to incorporate [CLIN] 5004 for Lot 5 Installations" (*id*. at 75). The parties executed Modification No. P00196 on December 20, 2012, which first established a T&M O&A CLIN for Lot 5 (app. supp. R4, tab 186 at 1).

11. Contract Modification No. P00182, which became effective on April 25, 2013, increased the contract price to $45,651,026, and converted work being done under the H106 clause from a T&M basis to a CPFF basis (R4, tab 10 at 1). This

---

[5] "SDD" is an acronym for "System Development and Demonstration"; *see*, *e.g.*, R4, tab 3 at 22. The parties previously had entered into an SDD contract for the upgrade of certain aircraft (complaint ¶ 13).

modification established new CPFF CLINs for the O&A work, including CLIN 3020 for Lot 3, CLIN 4025 for Lot 4, and CLIN 5021 for Lot 5 (*see, e.g., id.* at 4-10).

12. Modification No. P00182 also amended the contract to "incorporate the revised special contract requirement H106 Clause 'Rapid Repair and Response (R3) for C-5 Modernization (MAR 2013).'" The modified clause reads in relevant part:

> H106 RAPID REPAIR AND RESPONSE (R3) (MAR 2013)
>
> A. The below R3 procedures will be utilized for R3 efforts submitted on or before 28 Apr 2013 and those efforts being completed or reworked associated with those R3 MDR [Manufacturing Deficiency Report] efforts. New R3 efforts will utilize the procedures in Paragraph B:
>
> . . . .
>
> 3. WORK REQUESTS:
>
> A. The Contractor shall prepare and submit a work request to notify the [ACO] or his/her authorized representative of a legacy discrepancy that requires repair. The ACO or his/her authorized representative will review the work request to determine whether the work is within the general scope of the R3 CLIN. The Government reserves the right to question any work request that does not appear to be reasonable. Upon Government determination that it is appropriate to accomplish the work under the R3 CLIN(s), the Contractor shall perform the work described on the work request. The Contractor shall not be bound by individual work request hours, but the cumulative actual cost of labor and materials shall not exceed the NTE amount established in the applicable R3 CLIN(s). Contractor performance of work approved by the ACO or his/her authorized representative is subject to availability of funds on the applicable R3 CLIN.
>
> . . . .
>
> F. If an R3 activity causes an increase or decrease in the cost of, or the time required for, performance of any part of work under this contract, the [CO] will make an equitable adjustment in the contract prices, the delivery schedule, or both. The Contractor shall assert its right to an equitable

adjustment under this paragraph within 90 days from
completion of the R3 activity that the Contractor believes
causes an increase in cost or schedule.  The right to an
equitable adjustment shall be the Contractor's exclusive
remedy and the Government shall not be liable to suit for
breach of contract for actions accomplished in accordance
with the R3 clause.  Failure to agree to an adjustment shall
be a dispute under the Disputes clause.  Nothing in this
clause, however, shall excuse the Contractor from
proceeding with the contract as changed.

(R4, tab 10 at 12-13)

13.  In accordance with Contract Modification No. P00301, effective
September 30, 2014 (R4, tab 12 at 1), "Category 2" MDRs were identified as those
"Legacy condition repairs meeting the criteria of the scope of the H106 Clause and
charged against the O&A CLIN" (*id*. at 9).

*Contract Performance*

14.  In the induction phase, LMA received the aircraft at its facility in Marietta,
GA and prepared to do the work.  The government and the contractor then inspected
the planes to assess what work was needed.  (R4, tab 2 at 13; complaint ¶¶ 59, 62)

15.  As of October 15, 2012, only P-1 through P-5, the first five aircraft to be
repaired, had been delivered to the government (app. opp'n and mot., ex. 1
(declaration of Kaitlin E. Hill[6])).

16.  Nine aircraft (P-6 through P-14) had been inducted by October 15, 2012
and were undergoing varying stages of work under the contract.  All of these aircraft
had Category 2 MDRs that were ordered or approved on or after that date.  (App.
opp'n and mot., ex. 1)

17.  Lockheed Martin could not identify the extent of the need for legacy
repairs before the aircraft were inducted.  Even after induction, many legacy issues
could not be detected until various areas of the aircraft were opened up during the

---

[6] Ms. Hill, who was a Financial Analyst for appellant, provided data on the contract
that was obtained from Lockheed Martin's information management systems
(app. opp'n and mot., ex. 1).

7

process of performing the RERP upgrade work and post-upgrade testing. (App. opp'n and mot., ex. 2 (declaration of John Ferentinos[7]))

18. O&A work was approved by the government after the need was identified by the parties during inspections, test phases, and throughout the performance of work on each aircraft (app. opp'n and mot. at ex. 2 at 2-3).

*Lockheed Martin's Claim*

19. On October 15, 2018, pursuant to the CDA and the contract's FAR 52.233-1 DISPUTES clause, Lockheed Martin submitted a certified claim in the amount of $143,529,290; it requested a final decision from a government CO (R4, tab 2 at 1-3). LMA's claim alleges that "excessive O&A work changes resulted in an additional, constructive change in the form of cumulative impacts to the performance of the fixed-price RERP effort" (*id*. at 21). Appellant "calculates a total of 428,482 production hours attributable to the cumulative disruptive impacts of O&A changes" in its claim (*id*. at 25; JSF 5).

20. Appellant cannot state, per each individual aircraft designated P-7 through P-27, a specific number of hours of "excessive O&A work." Lockheed Martin says it did not keep such information in its course of business with respect to each aircraft. (Gov't mot. at 3[8] citing "Appellant's Response to Respondent's First Set of Interrogatories" (*id*. at 19-27); JSF 6)

21. LMA's monetary demand is predicated on the legal theory of a "type of measured-mile analysis." Appellant maintains this approach "provides a comparison of a production period that is impacted by a disruption with a production period that is not impacted." (R4, tab 2 at 22 (footnote omitted); *see also id*. at 23-25)

22. Lockheed Martin's claim lists the following "MDR documents" and "O&A hours" for aircraft P-5 through P-27:

---

[7] Among other duties, Mr. Ferentinos served as Liaison/Material Review Board Engineering Manager for LMA on this contract from February 2012-September 2018 (app. opp'n and mot., ex. 2 at 1).

[8] When citing the government's motion, we reference the sequential page number for the digital version of that document.

| Lot | Aircraft | MDR Documents | O&A Hours |
|---|---|---|---|
| Lot 3 | AC 3-1 (P-5) | 322 | 6,952 |
| | AC 3-2 (P-6) | 486 | 9,561 |
| | AC 3-5 (P-9) | 342 | 7,074 |
| | AC 3-3 (P-7) | 519 | 10,515 |
| | AC 3-4 (P-8) | 607 | 14,750 |
| Lot 4 | AC 4-1 (P-10) | 558 | 13,690 |
| | AC 4-2 (P-11) | 624 | 14,071 |
| | AC 4-3 (P-12) | 627 | 13,458 |
| | AC 4-4 (P-13) | 676 | 16,223 |
| | AC 4-5 (P-14) | 659 | 15,758 |
| | AC 4-6 (P-15) | 678 | 16,226 |
| | AC 4-7 (P-16) | 598 | 15,457 |
| Lot 5 | AC 5-1 (P-17) | 703 | 14,780 |
| | AC 5-2 (P-18) | 623 | 13,670 |
| | AC 5-3 (P-19) | 630 | 14,005 |
| | AC 5-4 (P-20) | 638 | 15,500 |
| | AC 5-5 (P-21) | 577 | 15,914 |
| | AC 5-6 (P-22) | 461 | 10,508 |
| | AC 5-7 (P-23) | 486 | 13,067 |
| | AC 5-8 (P-24) | 288 | 7,555 |
| | AC 5-9 (P-25) | 335 | 8,358 |
| | AC 5-10 (P-26) | 351 | 8,830 |
| | AC 5-11 (P-27) | 273 | 6,121 |

(R4, tab 2 at 11; JSF 8)

23. By email dated March 22, 2012, Lockheed Martin reported the following O&A hours for aircraft P-1 through P-4. Work on these planes, which were not included by LMA in the chart depicted in SOF ¶ 22, had been completed under the RERP Contract. These aircraft were returned to the Air Force prior to March 22, 2012:

    a. P-1 (aka A/C 0082): 9,412 O&A hours (returned to the Air Force - 5 Oct 10)

    b. P-2 (aka A/C 0088): 10,523 O&A hours (returned to the Air Force - 8 Apr 11)

    c. P-3 (aka A/C 0091): 9,819 O&A hours (returned to the Air Force - 24 Aug 11)

    d. P-4 (aka A/C 0093): 10,390 O&A hours (returned to the Air Force - 9 Jan 12)

(Gov't mot., ex. B at 1; JSF 9)

24. The P-5 aircraft was returned to the Air Force on July 20, 2012 (JSF 10). This plane is listed in the chart in SOF ¶ 22 as having 6,952 O&A hours.

25. The P-27 aircraft is one of the 21 aircraft included in LMA's claim as having allegedly had RERP production hours and performance costs improperly

9

increased as a result of disruption caused by excessive O&A work (JSF 11). This plane is listed last in the chart in SOF ¶ 22 with 6,121 O&A hours.

26. Lockheed Martin's claim alleges that the contract had a baseline of 4,276 O&A hours per aircraft (R4, tab 2 at 22). However, this baseline was not stated in any of O&A CLINs 1005, 2005, 3005, and 4005, nor does it appear anywhere else in the RERP contract as signed in April 2007 (R4, tab 3, *passim*). This baseline is not stated in any contract modification made thereafter. (JSF 12)

27. LMA's incurrence of claimed increased costs, allegedly caused by the "cumulative, disruptive impact" of "O&A changes" on RERP labor efficiency, pre-dated October 15, 2012. These "impacts" are highlighted in its certified claim, in which Lockheed Martin identifies an "adjustment" of the final amount claimed to "reflect the November 2012 . . . resolution for past legacy issues." (R4, tab 2 at 25) The downward adjustments for the alleged costs attributable to thousands of hours of "excess O&A disruption" that were performed prior to November 6, 2012, which appellant could not claim after its release in Modification No. P00178, are detailed in cost information developed and submitted by LMA (app. supp. R4, tab 436 at 12-13; JSF 20[9]).

28. Lockheed Martin's certified claim seeks to recover only for impacts associated with O&A work/MDRs that took place or were approved after Modification No. P00178, which is dated November 6, 2012 (R4, tab 408 at 23, tab 436 at 9, 12-13).

*The Contracting Officer Declined to Issue a Final Decision*

29. By correspondence dated December 7, 2018, the CO declined to issue a final decision on LMA's claim of October 15, 2018 (R4, tab 1).

*Lockheed Martin's Appeal Is Docketed by the ASBCA*

30. On October 3, 2019, the contractor appealed to the ASBCA on the basis of the government's "deemed denial of its 15 October 2018 certified claim." The Board on October 7, 2019 issued its "Notice of Docketing" and designated the appeal as ASBCA No. 62209.

---

[9] LMA asserts that it seeks recovery for issues that arose only after the release in Modification No. P00178, which was effective November 6, 2012. The contractor states that it "does not adopt as true the non-factual legal assertions" in the government's proposed finding 20. (App. opp'n and mot. at 12 n.5)

31.  On February 25, 2020, the government sent its Second Set of Interrogatories to LMA.  Interrogatory 1.a. to appellant was as follows:

> 1.  The H106 Rapid Repair and Response (R3) (March 2013) Clause (R4, tab 10 at 13) provides at subparagraph f. that "The Contractor shall assert its right to an equitable adjustment under this paragraph within 90 days from completion of the R3 activity that the Contractor believes causes an increase in cost or schedule."
>
> a.  Does Appellant contend that it in fact asserted such right to an equitable adjustment for R3 efforts "submitted on or before 28 Apr 2013" (R4, tab 10 at 12)

(Gov't mot., ex. C at 3-4; JSF 13)

32.  On April 10, 2020, Michael Smith, Senior Manager of Business Operations, Air Mobility & Maritime Missions at Lockheed Martin, certified the following answer from appellant in response to Interrogatory 1.a. above:

> Yes.  Furthermore, Lockheed Martin repeatedly notified the Government, including but not limited to the [CO], the Air Force Program team, and [DCMA], in emails, letters, during Project Management Meetings, during the delay and disruption meetings, during the Cost Summit, in Contractor Performance Assessment Reports (CPARs), etc., of the operative facts that establish Lockheed Martin's claim.

(Gov't mot., ex. C at 4; JSF 14) (emphasis omitted)

33.  In the government's Second Set of Interrogatories to Appellant, interrogatory 1.b. requested:

> b.  If Appellant does contend that it in fact asserted such right to an equitable adjustment pursuant to paragraph A.3.f. of the H106 clause, state all facts that support such contention, including, without limitation, the date of each assertion, the person making/signing the assertion to the government, the description or identification of any document transmitting the assertion to the government, and identification of the specific R3 activity (e.g. MDR by its

designated number) that "the Contractor believe[d] cause[d] an increase in cost or schedule."

(Gov't mot., ex. C at 4; JSF 15)

34. In response to the above interrogatory 1.b, LMA stated:

> The below documents both independently and/or collectively demonstrate that Lockheed Martin requested an equitable adjustment for R3 efforts and put the Air Force on notice of the operative facts establishing entitlement to such an adjustment.
>
> . . . .
>
> On 24 February 2011, Lockheed Martin provided a letter to the Air Force regarding the late delivery of aircraft 85-0002 [aircraft P-2]. The letter noted that there were many issues that resulted in the late delivery, including legacy-related issues, specifically legacy MDRs, among other things. Lockheed Martin additionally noted that the program faced a major challenge with the MDRs. Specifically, Lockheed Martin stated [:] "With the second production aircraft nearing completion, a key lesson learned is that, on a cumulative basis, legacy aircraft problems (a.k.a. "Over and Above") significantly impacted schedule…. LM asks the Government consider this fact and help us avoid a protracted engagement determining how much delay is Government caused (with commensurate equitable adjustments in schedule*)* and how much is attributable to LM causes." The letter was signed by Steve Pilcher and addressed to Jeffrey J. Joseph, Contracting Officer.
>
> Reference: D0-LTM-2011-000253-0

(Gov't mot., ex. C at 5-6; JSF 16)

35. On April 16, 2020, appellant produced its February 24, 2011 letter in response to Respondent's First Request for Admission and Production of Documents, which called for any written notifications of change pursuant to FAR 52.243-7 in the contract with respect to aircraft P-7 through P-27. The sentence emphasized below is the sentence omitted by ellipsis in that same paragraph from the February 24, 2011 letter that appellant identified in response to respondent's Second Set of Interrogatories:

12

With the second production aircraft nearing completion, a key lesson learned is that, on a cumulative basis, legacy aircraft problems (a.k.a. "Over and Aboves") significantly impact schedule. For ship 85-0002 [aircraft P-2], over 215 MDRs were processed, resulting in over 4,500 hours of over and above work not accounted for in the Integrated Master Schedule (IMS). LM asks that the Government consider this fact and help us avoid a protracted engagement determining how much delay is Government caused (with commensurate equitable adjustments in schedule) and how much is attributable to LM causes.

(Gov't mot., ex. E at 2; JSF 17)

36. Appellant's April 16, 2020 response to Respondent's First Request for Admission and Production of Documents, which called for any document(s) that appellant contends were written notification(s) of change pursuant to contract clause FAR 52.243-7, also included a document entitled "O&A Delay & Disruption Impact History." This provides:

Beginning Sep 2012, LM, LCMC and DCMA held weekly D&D meetings to agree on categorizing impacts to either RERP/LM or Legacy/AF

- Critical Path Schedule baseline in Aug 2012 utilized as basis for Delays

- LM assess delay and assign, with LCMC/DCMA weekly agreement

- Upon aircraft delivery, DD-250 date to be adjusted for legacy impact

- Costs for legacy delay and disruption have not been contractually addressed

(Gov't mot., ex. F; JSF 18) (emphasis added, omitted)

THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

I. *Standard of Review for Motions for Summary Judgment*

Summary judgment is a salutary measure for resolving litigation where there are no disputed material facts and the movant has proven that it is entitled to judgment

13

as a matter of law. *Mingus Constructors*, *Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); Federal Rules of Civil Procedure (FED. R. CIV. P.) 56(a). The Board's duty in evaluating such motions is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48.

Our assessment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits" (*Anderson v. Liberty Lobby Inc.*, 477 U.S. at 252), and we look to FED. R. CIV. P. 56 for guidance in deciding summary judgment motions (Board Rule 7(c)(2)). The "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

While the movant must demonstrate there is no "genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing FED. R. CIV. P. 56(e)), the nonmovant must "make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In order to overcome a motion for summary judgment, the party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) citing *Barmag Barmer Maschinenfabrik AG v. Murata Mach.*, *Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984).

When considering cross-motions for summary judgment, we "evaluate each motion on its own merits, taking care in each instance to view the evidence in favor of the non-moving party." *Almanza v. United States*, 935 F.3d 1332, 1337 (Fed. Cir. 2019) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. "This standard is not changed when the parties bring cross-motions for summary judgment, each nonmovant receiving the benefit of favorable inferences." *Chevron U.S.A. Inc. v. Mobil Producing Tex. & N.M.*, 281 F.3d 1249, 1253 (Fed. Cir. 2002) citing *Murphy Expl. & Prod. Co. v. Oryx Energy Co.*, 101 F.3d 670, 673 (Fed. Cir. 1996).

II. *The Government's Motion for Summary Judgment Asserts that Appellant's Claim Was Untimely*

The gravamen of the government's summary judgment motion is that ASBCA No. 62209 should be dismissed because appellant's underlying claim is time-barred. It

14

maintains that, for the Board to have jurisdiction, Lockheed Martin's claim of October 15, 2018 must not have accrued before October 15, 2012, which is the six-year filing limit for this appeal under 41 U.S.C. § 7103(a)(4)(A) and FAR 33.201. (Gov't mot. at 3).[10] Appellant agrees that October 15, 2012 is the date for application of the statute of limitations. Lockheed Martin goes a step further in narrowing the date by when its claim must have accrued: it maintains that this must have occurred after November 6, 2012, which is the effective date of its release of claims in Modification No. P00178 (*see*, *e.g.*, app. opp'n and mot. at 9-11; *see also* SOF ¶¶ 6-7, 28).

We agree with appellant that Lockheed Martin's claim must not have accrued on or before November 6, 2012 to be timely due to its retrospective release of claims in Modification No. P00178 (*see* SOF ¶¶ 6-7, 28), and consider the government's assertions that it is entitled to summary judgment because appellant's claim accrued by either February 24, 2011 or September 2012.

A. *The Government's Assertion That Lockheed Martin's Claim Is Untimely Because Appellant Knew or Should Have Known of the Basis for Its Claim by February 24, 2011*

The government justifies summary judgment upon the assertion that Lockheed Martin knew or should have known by February 24, 2011 of the "operative facts" of its claim for "excessive' O&A hours per aircraft." Because this date is prior to the statutory cutoff of October 15, 2012, accrual in 2011 would render the October 15, 2018 claim untimely and deprive the Board of jurisdiction. The government relies upon the contractor's correspondence of February 24, 2011, which asserted appellant's "right to an equitable adjustment of the contract caused by the alleged impact of 'over 4,500 hours of over and above work not accounted for in LMA's planned schedule to do the RERP work for aircraft P-2." (Gov't mot. at 10-11)

Appellant denies that the O&A hours it complained of on February 24, 2011 are of the same type as those raised in its claim. Lockheed Martin argues that it has, at a minimum, established "the presence of triable disputes of material fact" that preclude the government's motion. The contractor says that the correspondence relied upon by the government cites O&A hours for the P-2 aircraft that included work by both its production and support departments, whereas the claim's excess O&A hours are for production work only. LMA says this difference indicates the government's attempt to make an "apples-to-oranges" comparison between the hours cited in the

---

[10] For unstated reasons of its own, the government did not pursue this argument as a motion to dismiss for lack of jurisdiction in accordance with FED. R. CIV. P. 12(b)(1) although it could appropriately have done so (*see*, *e.g.*, *Satterfield & Pontikes Constr. Co.*, ASBCA Nos. 59980, 62301, 21-1 BCA ¶ 37,873 at 183,907-08). The government made a similar procedural choice in opposing Lockheed Martin's 2nd through 6th cross-motions; this is discussed in § III.B.

February 24, 2011 letter and those referenced in its subsequent claim.  (App. opp'n and mot. at 55-57)

Lockheed Martin provided and relied upon a declaration by employee John M. Greer to controvert the government's assertion that the February 24, 2011 letter supports the government's motion (*see*, *e.g.*, app. opp'n and mot. at 48-49, 52-53, 55-57, ex. 6 (declaration of John M. Greer)).[11]  He stated that LMA's email of March 22, 2012 lists "hours for the support and production departments" for "Aircraft P-1 through P-4" (*id*. at 2, ¶ 5).  Mr. Greer prepared the chart depicted in ¶ 7 of his declaration, which shows O&A hours for aircraft P-1 through P-27 that included production work only.  He said that these totals would have been "much higher if [the chart had] included support department hours."  (*Id*. at 2-3, ¶¶ 7-8)

The government seeks to undermine appellant's contention that the O&A hours cited in Lockheed Martin's correspondence of February 24, 2011 and email of March 22, 2012 differed from those in its October 15, 2012 claim by criticizing LMA's choice of declarant(s) and failure to provide an affidavit.  It asserts that appellant did not oppose the government's motion with an "affidavit from a 'knowledgeable affiant,'" which the government calls "required evidence."  The government argues that appellant failed to "set forth specific facts showing there is a genuine issue for trial," and indicates that evidence from another witness would have been more appropriate.  (Gov't reply[12] at 2-3) (emphasis omitted)

B.  *The Government's Assertion in the Alternative That Lockheed Martin's Claim Is Untimely Because Appellant Knew or Should Have Known of the Basis for Its Claim in September 2012*

The government alternatively urges that "in any event," Lockheed Martin's claim of October 15, 2018 is untimely because it accrued no later than September 2012 (gov't mot. at 11-13).  It contends that appellant "admitted in its answer to government interrogatories, and by the documents it produced, that [appellant] knew no later than September 2012 . . . that it had a claim for O&A impacts to RERP work."  It says the contractor repeatedly had notified the government of its "right to an equitable adjustment for such alleged impacts to fixed-price RERP CLINs."  The government cites a document from LMA entitled "O&A Delay & Disruption Impact History," which indicates that the parties initiated "delay and disruption meetings" in September 2012.  The government contends that it was "repeatedly notified" during these meetings "of the operative facts that establish Lockheed Martin's claim."  It

---

[11] Mr. Greer's current position at Lockheed Martin is "Government Finance Analyst Stf."  He began working on the subject contract in January 2014 as a "Government Finance Analyst" and continued on the project until the contract ended.  (App. opp'n and mot., ex. 6)

[12] The government's opposition and the government's reply are two separate documents.

maintains that the level of O&A hours for various aircraft serviced during that period, as well as information provided in the meetings in question, demonstrate that "September 2012 is the latest possible point that LMA knew or should have known that it had 'the operative facts that establish Lockheed Martin's claim.'" (*Id.* at 12)[13]

The contractor resists summary judgment predicated on the September 2012 meetings on several bases. First, it reiterates the "apples-to-oranges" argument made against the government's assertion that the contractor knew or should have known of the basis for its claim by February 24, 2011. LMA again cites Mr. Greer's declaration for the proposition that the number of O&A hours described in an email of March 22, 2012 "cannot be compared to the data points utilized" for the claim, as the former "include[s] hours for support departments" whereas the latter relied on different data points. (App. opp'n and mot. at 57, ex. 6) Appellant contends that the "10,523 hours described for aircraft P-2, and the 4,276 contract baseline hours reflect very different measures of O&A hours." This is because the former "includes hours for support as well as production departments" whereas "the hours utilized for comparison in [LMA's] claim, including the referenced 4,276 hour Contract baseline, do not include hours for support departments." (*Id.* at 55)

Appellant also relies upon the declaration of John Ferentinos to support its contention that "the volume of actual O&A hours for [aircraft] P-1 through P-5 could not have provided [it] with knowledge that the volume of O&A hours would consistently exceed more than double the estimated O&A volume for the majority of the aircraft" (app. opp'n and mot. at 57; *see also id.,* ex. 2 (declaration of John Ferentinos)). He stated that "legacy conditions on the C-5 aircraft received from the [government] under the Contract, and the O&A repairs necessary to address those legacy conditions, differed from aircraft to aircraft." According to Mr. Ferentinos, LMA did not know before receiving an aircraft from the government about the nature and extent of legacy repairs that were necessary. "Even after receiving an aircraft and beginning the RERP work, Lockheed Martin would continue to discover unknown legacy conditions throughout performance of the RERP work on that aircraft." As a result, appellant "had to continuously identify and document legacy conditions on an aircraft and, with concurrence from the government, perform the O&A work to address them." (*Id.* at 2-3)

Lockheed Martin also supports its opposition to the government's motion with the declaration of Kaitlin E. Hill (app. opp'n and mot., ex. 1) to substantiate that only

---

[13] We address Lockheed Martin's contention that its claim did not accrue in September 2012 because the "Continuing Claim Doctrine" applies and is timely because "each MDR [after November 6, 2012] establishes its own accrual date" (app. opp'n and mot. at 57-59) in §§ III-VI *infra* in analyzing LMA's cross-motions for summary judgment.

aircraft P-1 through P-5 had been delivered to the government by October 15, 2012; *see also* SOF ¶¶ 15-18).

### *Decision on the Government's Motion for Summary Judgment*

As we must, the Board draws all justifiable inferences in favor of Lockheed Martin as nonmovant for this motion. "Although we determine whether disputed facts are present, the Board will not at this juncture serve as arbiters to resolve controversies nor weigh evidence or make determinations of credibility," *Kellogg, Brown & Root Servs., Inc.*, ASBCA No. 58518, 16-1 BCA ¶ 36,408 at 177,524 citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 248.

FED. R. CIV. P. 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Appellant has established disputed material facts concerning an "essential element" for which it bears the burden at trial (*Celotex*, 477 U.S. at 323), *i.e.* whether it knew the degree to which it would encounter allegedly excessive O&A work, particularly for additional "production hours" prior to October 15, 2012 (*see Optimum Servs., Inc.*, ASBCA No. 59952, 16-1 BCA ¶ 36,490 at 177,822-23) (regarding the burden of proof using a measured mile approach). Summary judgment is appropriate only where the movant shows "that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law" (*Celotex*, 477 U.S. at 322; FED. R. CIV. P. 56(a)).

1. *There Are Triable Issues Concerning What Lockheed Martin's Correspondence of February 24, 2011 Evinces*

The government has not controverted (and we agree) that Lockheed Martin could not have known what repairs the aircraft needed until the planes were delivered to the contractor, opened up and/or otherwise inspected, and the government approved the MDRs that defined the work it required LMA to perform (*see, e.g*, SOF ¶¶ 9, 12-18, 22-24; *see also* SOF ¶¶ 31- 36). Based upon their positions within the company, personal knowledge, and level of involvement with the contract, we find that the declarations of Messrs. Greer and Ferentinos and Ms. Hill are sufficient to bring into question whether Lockheed Martin knew or should have known of the basis for its claim by February 24, 2011. Mr. Greer particularly disputed that the "excessive" O&A hours mentioned in LMA's letter of that date were the same as those cited in its claims, and Mr. Ferentinos emphasized that the contractor could not have known of the extent of necessary repairs until the government approved the MDRs. Similarly, the declaration of Ms. Hill is adequate to demonstrate that the aircraft identified in its claim had not been delivered by LMA as of October 15, 2012 (SOF ¶ 15); any of these

18

aircraft which had been inducted by that date had MDRs that were approved thereafter (SOF ¶ 16).

There are disputed material facts, and the government failed to show, that appellant knew or should have known of its October 15, 2018 claim at the time of the contractor's letter of February 24, 2011. Appellant's proffer exceeded "mere denials or conclusory statements" (*see, e.g.*, *SRI Int'l*, 775 F.2d at 1116).[14] The declarations of Messrs. Greer and Ferentinos and Ms. Hill are adequate to demonstrate triable issues concerning whether LMA knew of its claim by February 24, 2011, and whether the hours cited in that letter were calculated in the same manner as those that are the subject of the claim.

2. *There Are Triable Issues Concerning Whether Appellant Knew or Should Have Known of Its Claim at the September 2012 Meetings*

As with the government's argument that LMA's claim accrued February 24, 2011 and for the same reasons, we find that appellant established disputed material facts regarding whether it knew or should have known that its claim had accrued in September 2012. The government did not overcome LMA's contention that the government is attempting to compare "apples-to-oranges" for the type of hours cited (*i.e.*, the compilation of "production" and "support" hours in the meetings versus that of "production" hours only in its claim). The government did not show that the data discussed at the September 2012 delay & disruption meetings demonstrated that the contractor was or should have been then aware of the basis for its October 15, 2018 claim. Nor did the government successfully impugn the declarations of Messrs. Greer and Ferentinos or Ms. Hill, either on the basis of format or sufficient personal knowledge (*see, e.g.*, gov't reply at 2-4) (contending that LMA "fail[ed] to set forth the type of evidence required by the Federal Circuit to avoid summary judgment in favor of the government") (emphasis omitted).

_____

[14] FED. R. CIV. P. 56(c)(1) allows "a party asserting that a fact cannot be or is genuinely disputed" to support its assertion by means of a variety of materials that are made part of the record. These may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Subdivision (c) of the Advisory Committee Notes to the 2010 Amendment of FED. R. CIV. P. 56 shows that the former evidentiary requirement of a "formal affidavit" was eliminated. In accordance with 28 U.S.C. § 1746, the rule now permits "a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."

*Conclusion*

We conclude there are disputed material facts regarding whether Lockheed Martin knew or should have known that its claim had accrued by either February 24, 2011 or September 2012.  This is because there are questions regarding what the contractor knew and when about the need for O&A work, and regarding the number of production hours in its claim versus the production and support hours discussed in its February 24, 2011 letter and at the September 2012 meetings.  These preclude a grant of summary judgment to the government, and we deny its motion.

III.  *Lockheed Martin's Six Cross-Motions for Summary Judgment:  The Government's Overarching Assertions That Appellant's 2nd-6th Cross-Motions Raise a New Claim and There Is No "Continuing Claim"*

Lockheed Martin filed six cross-motions for summary judgment which, like the government's motion, concern the timeliness of its October 15, 2018 claim.  Appellant seeks to prove that its claim did not accrue before October 15, 2012, which is the date of the six-year limit placed by the CDA.  Each of LMA's motions aims to establish the Board's jurisdiction, albeit for a different reason.  (App. opp'n and mot., *passim*)  We include an overview to provide context for the subsequent analyses, and address the government's arguments common to LMA's 2nd through 6th cross-motions.

A.  *Overview of Appellant's Cross-Motions for Summary Judgment*

Lockheed Martin argues in its 1st cross-motion that its claim is timely because its release on November 6, 2012 in Modification No. P00178 "reset any claim accrual date" and claim accrual "begins anew" or "re-starts" (app. opp'n and mot. at 2, 10-19).  While appellant's 2nd cross-motion does not employ the term "continuing claim doctrine,,[15]" it relies upon decisions that articulate that legal theory.  LMA focuses in this motion upon the date the government's liability is fixed as the date of claim accrual, and says that its claim "could not have accrued at any time before Government direction to perform the specific O&A work."  (*Id*. at 7, 10, 20-25)

Appellant grounds its 3rd through 6th cross-motions in the continuing claim doctrine, but keys its arguments in each to different claim-related events.  Its 3rd cross-motion bases timeliness on the government's approval of relevant MDRs after October 15, 2012 (app. opp'n and mot. at 26-30).  The contractor's 4th cross-motion asserts claim timeliness upon the aircraft in question being inducted after October 15, 2012 (*id.* at 30-33), whereas its 5th cross-motion urges timeliness because the "Lot 5 option" was not "exercised until after" October 15, 2012 (*id*. at 33-35).  The 6th

---

[15] This doctrine is variously referred to as the "continuing claim doctrine" or the "continuing claims doctrine."

cross-motion alleges that the portion of LMA's claim that pertains to the impacts from the MDRs ordered under CPFF O&A CLINs and Lot 5 O&A work is timely because these CLINs were not awarded until April 25, 2013 and December 20, 2012, respectively (*id*. at 35-38).

B. *The Government's Assertion That Appellant's 2nd Through 6th Cross-Motions Raise New Claims*

The government objects to Lockheed Martin's 2nd through 6th cross-motions by contending (among other things) that LMA raised matters in these that are outside the claim presented to the CO (*see*, *e.g.*, gov't reply at 7-8). Because the government did not pursue this argument in accordance with FED. R. CIV. P. 12(b)(1)[16] (*see* n.10, *supra*), we consider this argument as presented, *i.e.* as a defense to appellant's 2nd through 6th cross-motions and not a jurisdictional motion. Had we evaluated the government's argument as a motion to dismiss in accordance with FED. R. CIV. P. 12(b)(1), the outcome would have been the same as our conclusion below: the Board has jurisdiction over these motions and the government has not proven that appellant erroneously asserted a new claim in these cross-motions.

1. *The Government's Allegations*

The government contends that Lockheed Martin's 2nd cross-motion is tantamount to a "new, MDR-by-MDR alleged 'impact' claim," and says that the Board lacks jurisdiction because this claim was not submitted to a CO (gov't reply at 7 n.1). The government also raises the "new claim" argument in defending against LMA's 3rd through 6th cross-motions, each of which is predicated upon the continuing claim doctrine (*see* gov't opp'n at 20-23). According to the government, because "LMA's certified claim includes no 'continuing claims' that would save LMA's certified claim from being time-barred . . . . any such 'distinct' claims, as now framed by LMA, were never presented to a [CO] in writing for a final decision as required by the CDA" (*id*. at 23 (citing gov't reply at 5-9)).

2. *The Board's Jurisdiction Over Lockheed Martin's 2nd through 6th*

---

[16] Judge Hartman's opinion in *Kamran Zaland Supplies and Servs*., ASBCA No. 61339, 19-1 BCA ¶ 37,475 provides a helpful guide in distinguishing between motions to dismiss pursuant to Fed. R. Civ. P. 12(b) that are "facial" in nature versus those that are "factual." The former involves an attack on the "subject matter jurisdiction [and] questions the sufficiency of [the] pleading," whereas the latter "in contrast, challenges the existence of jurisdiction in fact irrespective of allegations set forth." *Kamran Zaland*, 19-1 BCA at 182,049 (further citations omitted). *See also L-3 Commc'ns Integrated Sys. L.P.*, ASBCA No. 60713, 60716, 17-1 BCA ¶ 36,865 at 179,625 (citing 2 Moore's Federal Practice 3D §12.30[3]).

*Cross-Motions*

It helps to understand what a "claim" is for federal contract purposes, as it is a term of art. FAR 2.101 in relevant part defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." This is consistent with the CDA at 41 U.S.C. § 7103(a), which requires the prior submission of a contractor's claim to the CO for decision. It is well-established that the "content of the claim is crucial, as it establishes the bounds of the appeal" (*Northrop Grumman Sys. Corp. Space Sys. Div.*, ASBCA No. 54774, 10-2 BCA ¶ 34,517 at 170,230). This information provides essential notice, as "[t]he Government is entitled to learn the basis of the claim asserted by the contractor, ensuring both a lack of prejudice to the Government and judicial economy by establishing a process where claims are resolved at the lowest possible level" (*id.* (citing *J.S. Alberici Constr. Co. and Martin K. Eby Constr. Co. (JV)*, ENG BCA 6178, 98-2 BCA ¶ 29,875 at 147,917, *aff'd, Caldera v. Alberici*, 153 F.3d 1381 (Fed. Cir. 1998))).

The government raises whether Lockheed Martin went beyond the permissible boundaries of its claim in its 2nd through 6th motions for summary judgment, and whether appellant wrongly attempted to assert new claims through these motions (gov't opp'n at 20-23). The Board previously has considered this type of argument, and has articulated a "standard for distinguishing between an extra-jurisdictional, new claim from an alternative legal basis for an existing claim." Our assessment "does not require ridged [*sic*] adherence to the exact language or structure of the original administrative CDA claim." *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003). Instead, "we are to apply a common sense analysis." *Northrop Grumman*, 10-2 BCA at 170,230 (citing *Ebasco Envtl.*, ASBCA No. 44547, 93-3 BCA ¶ 26,220 at 130,490 and *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1579 (Fed. Cir. 1992)).

Factors articulated in *Scott Timber* aid in assessing whether a "new claim" has been asserted by LMA in its motions. For example, even if appellant "may have posed slightly different legal theories" during litigation, the Board has jurisdiction where (as here) its "claim is essentially the same as presented to the CO." *Scott Timber*, 333 F.3d at 1366. The court held that it "kn[e]w of no requirement in the [CDA] that a 'claim' must be submitted in any particular form or use any particular wording," as long as "the contractor submit[ted] in writing to the [CO] a clear and unequivocal statement that gives the [CO] <u>adequate notice of the basis and amount of the claim</u>." *Id.*, 333 F.3d at 1365 (citing *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)) (underlining added).

The Board has held that "[t]he introduction of additional facts which do not alter the nature of the original claim . . . or the assertion of a new legal theory of

22

recovery, when based upon the same operative facts as included in the original claim, do not constitute new claims." *Penna Group*, *LLC*, ASBCA No. 61640 *et al.*, 21-1 BCA ¶ 37,917 at 184,150 (citing *Trepte Constr. Co.*, ASBCA No. 38555, 90-1 BCA ¶ 22,595 at 113,385-86). These decisions are consistent with *Lee's Ford Dock v. Sec'y of the Army*, 865 F.3d 1361 (Fed. Cir. 2017), which guides us in ascertaining whether there is a materially different claim over which we lack jurisdiction. If we are required to "focus on a different or unrelated set of operative facts" (*id.* at 1369) (quoting *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990)), then a new claim has arisen. However, if we must only "review the same or related evidence" that was in the underlying claim in adjudicating an appeal, "then only one claim exists" (*Placeway*, 920 F.2d at 907). The "operative" facts need not be identical, but there must be a common basis:

> Suits involve the same claim (or "cause of action") when they "'aris[e] from the same transaction,'" *United States v. Tohono O'odham Nation*, 563 U.S. 307, 316, 131 S.Ct. 1723, 179 L.Ed. 2d 723 (2011) (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482 n.22 (1982)), or involve a "common nucleus of operative facts." RESTATEMENT (SECOND) OF JUDGMENTS § 24, Comment *b* (1982).

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S.Ct. 1589, 1595 (2020) (alterations in original).

LMA's appeal and its cross-motions all cite its October 15, 2018 claim, seek relief under the contract's H106 and Changes clauses, and request the same monetary remedy (*see*, *e.g.*, SOF ¶¶ 19-28; complaint ¶¶ 3-5, 24-30, 44-57, 90-94, 122-28, 130-56; app. opp'n and mot., *passim*). Among other things, the claim advises the CO that Lockheed Martin seeks recovery for the impact of multiple changes to the contract that occurred when the government approved an MDR. The claim also notes the periodic induction of various aircraft (including those in Lot 5), which were then inspected to assess the extent of repairs needed (*see*, *e.g.*, R4, tab 2 *passim*, especially at 3, 5-6, 11-16). These assertions are common to LMA's claim and its 2nd through 6th motions.

Lockheed Martin has met its underlying burden of proving jurisdiction (*see*, *e.g.*, SOF ¶¶ 1, 3, 5, 8, 10, 12, 14-29 regarding the contract, appellant's performance, the information provided in the claim, and the CO's refusal to render a COFD; *see also* app. opp'n and mot., *passim*, which presents these cross-motions; *see especially* at 20-38). *See also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) and *United Healthcare Partners*, ASBCA No. 58123, 13 BCA ¶ 35,277 at 173,156 (the proponent of the appeal bears the burden of establishing the tribunal's jurisdiction).

23

Although LMA's claim cites the "measured mile" legal theory and not the "continuing claim doctrine" (*see*, *e.g*., R4, tab 2 at 22-25), the operative facts in its 2nd through 6th cross-motions pertain to Lockheed Martin's October 15, 2018 claim and are essentially the same.  In the claim, appellant notified the government of the basis for its demand (*id*., *passim*).  In defending against the government's motion for summary judgment for untimeliness, LMA sought the same remedy and relied upon the same operative facts (*i.e*., the government's successive approvals of multiple MDRs requiring the contractor to perform additional O&A work) as well as the serial induction of aircraft followed by an inspection to determine how much work needed to be done.  Appellant provided adequate information to establish the Board's jurisdiction over MDRs approved on or after October 15, 2012 and over its 2nd through 6th cross-motions.

We conclude that LMA's claim remains properly before the Board, and that appellant did not impermissibly change its claim (or raise a new one) by its assertions concerning MDRs in its 2nd cross-motion.  Nor did Lockheed Martin assert a new claim in its arguments regarding the continuing claim doctrine in its 3rd through 6th cross-motions.  Akin to the contractor in *Scott Timber*, LMA's "claims in this case [did] not 'subvert the statutory purpose of requiring contractors first to submit their claims to the [CO]' to allow the CO to receive and pass judgment on the contractor's entire claim" (*see Scott Timber*, 333 F.3d at 1366) (citing *Croman v. United States*, 44 Fed. Cl. 796, 801-02 (1999)).

IV.  *Appellant's 1st Cross-Motion for Summary Judgment:  "The 15 Oct. 2018 Claim Is Timely Because All Claimed Impacts Arose After Lockheed Martin's Release of Claims in* [*Modification No.*] *P00178, Dated 6 Nov. 2012"*[17]

Appellant says in its 1st cross-motion that, "even assuming (solely) for the purposes of this Cross-Motion that all or some part of Lockheed Martin's claim could first have accrued earlier, the entirety of [its] claim would still be timely."  LMA maintains that its "certified claim [took] pains to explain that it sought recovery only for issues after the [Modification No.] P00178 release and detailed the manner in which it excluded any earlier issues."  (App. opp'n and mot. at 10, 12)

The contractor argues that the release in Modification No. P00178 "cut[] off the Government's legal liability for past issues, which as a matter of law 're-started' any accrual period for Lockheed Martin's claim" (app. opp'n and mot. at 10).  LMA relies upon the retrospective nature of its release in that modification,[18] which (with

---

[17] App. opp'n and mot. at 10 (emphasis omitted).
[18] The release is quoted in SOF ¶ 6.

exceptions not relevant to this motion) applies to "all C-5 RERP Production Schedule impacts" through November 6, 2012, "the date of this Supplemental Agreement execution" (*id.* at 12).

LMA relies upon *Electric Boat Corp.*, ASBCA No. 58672, 19-1 BCA ¶ 37,233, *aff'd*, *Electric Boat Corp. v. Navy*, 958 F.3d 1372 (Fed. Cir. 2020) and *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 58175, 15-1 BCA ¶ 35,988, *aff'd on recon.*, 15-1 BCA ¶ 36,075 (*KBR*[19]) as the bases for this motion. It cites these decisions for the proposition that "[e]ven for circumstances in which a contractor knows of a change and has incurred some resultant injury [a] CDA claim does not accrue until the Government becomes ***legally liable*** for the suffered injury." (App. opp'n and mot. at 13) (emphasis in original)

Lockheed Martin contends that, consistent with the ASBCA's decision in *KBR*, "an event extinguishing existing claims (even if only temporarily) effectively 're-starts' the accrual period." It says that in *KBR*, the claim was deemed timely where the contractor "took a superseding-intervening action to cut-off liability" for its billing noncompliance but later "rescinded its previously-provided credit." (App. opp'n and mot. at 13) (emphasis omitted) Appellant alleges that *KBR* "dealt with the issue of claim accrual starting, being temporarily extinguished, and then beginning anew (*i.e.*, 're-starting') well after when the injury originally occurred" (*id.* at 13). LMA points to the contractor's rescission of the modification in *KBR* as an "intervening contractual event that had extinguished liability" (*id.* at 15). It asserts that *KBR* demonstrated that "an action terminating liability, even if only temporarily, has the effect of re-starting the start date for the claim-accrual analysis" (*id.* at 17-18). Lockheed Martin maintains that in *KBR*, the "government's claim was found timely because it was within six years of when liability re-started, despite being filed significantly more than six years after the claim originally accrued" (*id.* at 13).

Appellant argues that the Federal Circuit's decision in *Electric Boat* also supports the proposition that a claim does not accrue where "the ***parties' contractual actions***" delayed government liability (*id.* at 16) (emphasis in original). In that case, OSHA published a regulation in December 2004 that resulted in additional compliance costs to the contractor. The parties modified the contract by adopting a clause that postponed by two years "making the Government potentially liable for costs in connection with 'changes in federal law.'" LMA says that the Federal Circuit's decision in *Electric Boat* used a two-step analysis of claim accrual which recognized that claim accrual did not begin despite knowledge and injury where the contract modification "shifted the CDA-cognizable date of claim accrual" to a later time. (App. opp'n and mot. at 16) Appellant maintains that "*KBR* is consistent with the Federal Circuit's recent decision in *Electric Boat*," and says that in the latter, "the

[19] Unless specified otherwise, references to the ASBCA's decision in *KBR* are to its decision at 15-1 BCA ¶ 35,988.

Court explained that mere monetary 'injury' and 'knowledge of a potential claim do not – **without legal liability for the injury** – cause a claim to accrue." (*Id*. at 15) (emphasis in original)

The government rejects appellant's "nonsensical legal concept of accrual date 're-start' of a released claim." The government says this supposed legal theory "is solely LMA's creation, and not the Board's ruling in *KBR* nor in any other case. Released claims don't restart, they end." The government further distinguishes *KBR* on the basis that "[t]here was no bilateral release of existing claims at issue" in that case. (Gov't reply at 4)

*Decision on Appellant's 1st Cross-Motion for Summary Judgment*

Lockheed Martin's 1st cross-motion takes an original approach in arguing that the holdings in *KBR* and *Electric Boat* (the latter litigation as decided by both the ASBCA and the Federal Circuit) dictate that the post-Modification No. P00178 portion of its claim is timely, even if the Board finds that LMA's claim accrued prior to October 15, 2012. We disagree with appellant's analysis and reliance upon these decisions. Appellant's overly-broad characterization of this November 6, 2012 modification as an "intervening contractual event that had extinguished liability" (as defined in these decisions) that has the effect of "re-starting" the statutory claim accrual date relies upon a novel legal theory that is insufficiently supported. Neither the *KBR* nor the *Electric Boat* rulings warrant a determination that LMA is entitled to judgment on its 1st cross-motion as a matter of law, as those decisions can be factually and legally distinguished from the instant appeal.

A. *Kellogg Brown & Root Servs., Inc*., ASBCA No. 58175, 15-1 BCA ¶ 35,988 *Does Not Support LMA's 1st Cross-Motion for Summary Judgment*

As part of the factually-convoluted dispute that underlies ASBCA No. 58175, the government asserted a claim for $11,483,487 against KBR for failing to follow ACO guidance regarding billing for dining services. Although the contractor initially credited the government with the amount it was overpaid due to its noncompliance, KBR later rescinded that action. The jurisdictional issue in *KBR* turned upon when the government knew or should have known of its claim for its mistaken overpayment to the contractor in light of the revocation. *KBR*, 15-1 BCA ¶ 35,988 at 175,815-23.

As in previous decisions, the Board in *KBR* "applied a 'knew or should have known' of the claim test interchangeably with a 'concealed or inherently unknowable' test, stating that the test includes an intrinsic reasonableness component." *KBR*, 15-1 BCA ¶ 35,988 at 175,824 (citing *Holmes v. United States*, 657 F.3d 1303, 1317-18, 1320 (Fed. Cir. 2011)); *Raytheon Co., Space & Airborne Sys*., ASBCA No. 57801 *et al.*, 13 BCA ¶ 35,319 at 173,376; *Raytheon Missile Sys*., ASBCA No. 58011, 13 BCA

26

¶ 35,241 at 173,017.  In ASBCA No. 58175, the Board found that KBR's actions delayed the date when the government reasonably knew or should have known that it had a claim for overpayment (*KBR*, 15-1 BCA at 175,824).

We take exception to Lockheed Martin's assertions that "*KBR* was analogous to the instant appeal," and that "*KBR* stands for the legal proposition that claim accrual starts anew after a contractual event cuts off the Government's legal liability for an alleged injury or injuries" (app. reply at 11).  These assertions provide only a partial explanation for the Board's holding in *KBR* that the claim accrual date was extended.  LMA neglected to add that *KBR* turned on the finding that the contractor's rescission of its credit for overpayment, and the manner in which it did so, prevented the government from knowing (or having reason to know) of the basis for its claim.  The Board in *KBR* applied the "concealed or inherently unknowable" standard that was discussed in *Holmes* in determining that KBR's conduct prevented the government from knowing the basis of its claim until a later time.  *KBR*, 15-1 BCA at 175,824.

While we agree in principle that *KBR* shows that the parties' actions can affect the date of claim accrual, that does not end the inquiry into whether and how that decision applies here.  Its impact, if any, is tied to the underlying facts of that decision and the instant appeal.  To comport with *KBR*, Lockheed Martin must prove more than that it signed a retrospective release of claims in Modification No. P00178 in order to extend its claim accrual date:  LMA must show how doing so reasonably led it to meet the "'concealed or inherently unknowable' test" applied in *KBR* (*see*, *e.g.*, *KBR*, 15-1 BCA at 175,824).  LMA did not do so, and has not proven that *KBR* supports its 1st cross-motion, as it must to merit favorable judgment (*see, e.g.*, *Celotex*, 477 U.S. at 324; *also* FED. R. CIV. P. 56(a)).

B.  *Neither Electric Boat Corp., ASBCA No. 58672, 19-1 BCA ¶ 37,233 Nor Electric Boat Corp. v. Navy, 958 F.3d 1372 (Fed. Cir. 2020) Supports LMA's 1st Cross-Motion for Summary Judgment*

Lockheed Martin contends that its claim for "[p]ost release injuries (which are the sole basis of the certified claim currently under appeal) began running ***after*** the [Modification No.] P00178 release" (app. reply at 10-11) (emphasis in original).  It says that the "Federal Circuit's decision [in *Electric Boat*] stood for the proposition that the Prime Contractor's claim does not begin to accrue – regardless of contractor knowledge and injury – until the Government first becomes ***legally liable*** for such injuries" (*id*. at 8) (citing *Electric Boat*, 958 F.3d at 1376).

As with the discussion regarding *KBR* (*supra*), appellant does not make its case that the holdings in *Electric Boat* allow Lockheed Martin to "re-start" its claim after signing a retrospective release of claims.  Appellant again fails to tell the full story, or sufficiently link the facts at hand to those of *Electric Boat*.  The court and Board agreed in their respective *Electric Boat* decisions that the claim accrual date there

27

began two years after the effective date of the OSHA regulation because the parties contractually agreed to this interregnum. They did not agree to a claim "re-start," but to a specific and intentionally-established accrual date. LMA has not shown how the circumstances of *Electric Boat* entitle it to judgment or that the post-release portion of its O&A claim "re-started" because it was not included in Modification No. P00178.[20]

*Conclusion*

FED. R. CIV. P. 56(a) requires that a movant prove two things to obtain summary judgment: it must first "show[] that there is no genuine dispute as to any material fact" and second, that it is "entitled to judgment as a matter of law." There is neither sufficient evidence nor convincing argument to warrant summary judgment on Lockheed Martin's 1st cross-motion as framed, or for the Board to adopt appellant's proposed legal theory that its claim "re-started" following Modification No. P00178 "as a matter of law." Among other things, appellant did not sufficiently align the facts of its appeal with the legal justification urged. LMA's legal rationale is further unavailing for the proposition that "even if" its claim (or portions thereof) accrued prior to October 15, 2012, its claim is still timely "in full or in part" based upon the decisions it cites (app. opp'n and mot. at 10).[21]

We conclude appellant failed to support its argument that *KBR* and/or the *Electric Boat* decisions stand for the proposition that Modification No. P00178 "re-started" LMA's claim or established a different accrual date than that contemplated by the CDA or the FAR. Appellant did not meet its duty as movant of proving that it is entitled to judgment as a matter of law; *see, e.g.*, *Mingus Constructors, Inc.*, 812 F.2d at 1390 and FED. R. CIV. P. 56(a). We deny appellant's 1st cross-motion for summary judgment.

---

[20] We address the point at which liability attaches in § V, *infra*.

[21] Lockheed Martin explained this motion was made in concert with its other cross-motions, particularly those that deal with application of the continuing claim doctrine (app. opp'n and mot. at 10). *See* the decisions on LMA's remaining cross-motions in §§ VI-VII, *infra*.

28

V. *Appellant's 2nd Cross-Motion for Summary Judgment: "Each MDR Represents an Underlying Basis for Recovery Under the Contract, Each with a Separate Claim Accrual Date; All Claims for Impacts Associated with MDRs After 15 Oct. 2012 Are Timely as a Matter of Law"*[22]

In Lockheed Martin's 2nd cross-motion, appellant argues that its claim accrued when the government incurred liability by authorizing MDRs for additional O&A work. LMA maintains that its claim is timely "because [it] involves *separate* changes each with its own claim accrual date" that occurred after October 15, 2012. (App. opp'n and mot. at 7, 22-25).[23]

A. *Requirements for the Accrual of a Claim*

The CDA requires at 41 U.S.C. § 7103(a)(4)(A) that a claim be filed within six years of accrual ("Each claim by a contractor against the Federal Government relating to a contract and each claim by the Federal Government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim"). Although this is not a jurisdictional requirement (*Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1322 (Fed. Cir. 2014)), a claimant's failure to comply with this statute of limitations results in the claim being time-barred (*Envtl. Safety Consultants*, *Inc.*, ASBCA No. 58343, 14-1 BCA ¶ 35,681 at 174,666).

Although the CDA does not define "accrual," FAR 33.201 provides in relevant part:

> Accrual of a claim means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred.

---

[22] App. mot. at 20.

[23] The government asserted that appellant's 2nd cross-motion "is not an alleged 'continuing claim,'" but a "new, MDR-by-MDR alleged 'impact' claim" and that the Board lacks jurisdiction because this claim was never presented to a CO for a decision (gov't reply at 7 n.1). We analyzed and rejected this argument in §III.B, *supra* and do not consider it further here.

B. *The Parties' Positions*

The parties take different approaches regarding just *what* a claimant must know for a claim to accrue; both focus upon the requirement in FAR 33.201 that accrual takes place when "all events, that fix the alleged liability" are "known or should have [been] known." We rejected the government's emphasis on the latter phrase in its motion for summary judgment (*see* § II, *supra*), not because it is inappropriate (as it clearly is necessary), but because there were triable facts regarding when Lockheed Martin's claim was known or should have been known that precluded judgment for the government. In its 2nd cross- motion, appellant emphasizes the former requirement of "liability" for fixing the accrual date.

While Lockheed Martin does not deny that it raised concerns over what it regarded as excessive O&A work in its February 24, 2011 correspondence and in the September 2012 meetings, it gives special attention in this motion to the provision in FAR 33.201 regarding "liability" as a criterion for claim accrual. In short, LMA argues that it could not have "known" it had a claim until the government authorized the additional O&A work by approving multiple MDRs and as a result became "liable" for the impacts of that effort. Appellant maintains that its "claim does not have a single accrual date but, instead, has a series of separate accrual dates corresponding to each of the underlying MDRs that Lockheed Martin was ultimately required to perform." (App. opp'n and mot. at 24)

### *Decision on Appellant's 2nd Cross-Motion for Summary Judgment*

Ascertaining claim accrual is a fact-intensive inquiry that is done on a case-by-case basis. Our "[p]recedent elaborates that whether and when a CDA claim accrued is determined in accordance with the FAR, the conditions of the contract, and the facts of the particular case." *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 626 (Fed. Cir. 2016) (further citations omitted).

A. *Appellant Was Required to Perform O&A Work When the Government Approved the MDRs and Not Before: It Was Then That Liability Attached*

Contract clause H106 controls how the parties handled MDRs ordered on or before April 28, 2013. Once the contractor identified a "legacy discrepancy that requires repair," it had to "prepare and submit a work request." Lockheed Martin became obligated to perform the O&A work when the MDR was approved by the "ACO or his/her authorized representative." The government then became liable for increased costs and was required to "make an equitable adjustment in the contract prices, the delivery schedule, or both" for each approved MDR that "causes an increase or decrease in the cost of, or the time required for, performance of any part of work under [the] contract." (SOF ¶ 12; *see also* SOF ¶¶ 9, 11, 13)

30

Because the contract provides that each approved MDR that adversely impacted the contractor's cost or schedule furnished a separate and identifiable basis for a request for an equitable adjustment under the H106 and Changes clauses, LMA's O&A claim does not have a single date of accrual. Rather, the claim has multiple accrual dates that correspond to the government-approved MDRs which ordered the contractor to perform the extra work. Provided these MDR approvals fall within the statutory period, the Board has jurisdiction over a claim that has a single cause of action (here, the requirement for allegedly excessive O&A work) but is based upon separate and distinct events that took place at different times. *See, e.g.*, *Ariadne Fin. Servs. Pty. Ltd. v. United States*, 133 F.3d 874, 879 (Fed. Cir. 1998) ("the continuing claims doctrine operates to save later arising claims even if the statute of limitations has lapsed for earlier events" where there is "a series of distinct events – each of which gives rise to a separate cause of action").

B. *Lockheed Martin's Claim Accrued with the Government's Approval of MDRs on or after October 15, 2012*

We find that Lockheed Martin's claim accrued each time the government approved MDRs that required additional O&A hours, and the contractor undertook performance that caused it to incur additional costs and/or delay; *see Gray Personnel*, ASBCA No. 54652, 06-2 BCA ¶ 33,378 at 165,476. Liability was then fixed pursuant to FAR 33.201, and the government's approvals of a series of MDRs obligating LMA to perform further O&A work defined the point (or points) at which LMA knew or should have known its claim accrued.

Under the circumstances in this appeal, it is not enough that contract history shows that Lockheed Martin was aware of the potential (or even the likelihood) that the C-5 aircraft to be refurbished could need more O&A work than it allegedly anticipated (*see, e.g.*, SOF ¶¶ 6, 9, 12, 22-25, 27, 35-36). For its claim to accrue, the contractor had to have been "injured," *i.e.*, ordered by the government to perform the additional work so that liability attached and a claim came into being (*see, e.g.*, *Electric Boat*, 958 F.3d at 1375-76). Lockheed Martin had no claim and the government had no liability to LMA until the MDRs were approved, because "for liability to be fixed, some injury must [first] have occurred." *Electric Boat,* 958 F.3d at 1376. Once that happened, the CDA's statute of limitations began to run, even though appellant had not incurred the total costs of the work; *see Gray Personnel*, 06-2 BCA at 165,476.

31

*Conclusion*

We grant Lockheed Martin's 2nd cross-motion for summary judgment and find that its claim is timely.[24]

VI. *Appellant's 3rd Cross-Motion for Summary Judgment: "Lockheed Martin's Claims Are Timely as a Matter of Law Under the Continuing Claims Doctrine Because the Underlying O&A Work Was Ordered After 15 Oct. 2012"*[25]

Lockheed Martin's 3rd cross-motion argues that its "claims are timely as a matter of law under the continuing claims doctrine because the underlying O&A work was ordered after 15 Oct. 2012" (app. opp'n and mot. at 26). This legal argument is integral to appellant's 3rd through 6th cross-motions, as it asserts in each of these that "if these changes were viewed as a single change event, the claim would still be timely (in full or in part) in accordance with the 'Continuing Claims Doctrine[26]' (Cross-Motions #3-6)" (*id.* at 10). This argument builds upon certain facts urged in appellant's 2nd cross-motion, with which we have agreed. These include that the government's approval of MDRs calling for further O&A work established separate claim events, and that any portion of the claim that occurred within the CDA's 6-year statute of limitations is timely (*see* § V, *supra*).

Appellant emphasizes prior Board decisions that deal with the continuing claim doctrine, and analogizes contract actions in those opinions to the government's approval of MDRs in the instant appeal (app. opp'n and mot. at 26-30). For example, in *Certified Constr. Co. of Ky.*, ASBCA No. 58782, 14-1 BCA ¶ 35,662, the Board found that the contractor's claim did not accrue until publication of a monthly price index that determined whether it was owed an adjustment under the contract (*id.* at 174,571). Appellant likens the contractor's obligation to pay an increased price in *Certified Constr.* to LMA's obligation to perform additional work after the government approved an MDR: "Until the Government approved performance of the work associated with a particular MDR, Lockheed Martin could not know the O&A repairs it was actually required to perform." As a result, "the Government's liability

---

[24] Although §§ V-VI of this decision speak to "claim accrual" and appellant's 3rd cross-motion focuses on events on October 15, 2012 or thereafter, we note that Lockheed Martin has agreed that Modification No. P00178 released all claims on or before November 6, 2012, even if these were within the accrual period. *See*, *e.g.*, app. opp'n and mot. at 10-11; *see also* SOF ¶¶ 6-7, 28.

[25] App. opp'n and mot. at 26.

[26] It should be noted that the continuing claim doctrine and appellant's cases cited in its cross motion pre-date the Federal Circuit's decision in *Sikorsky*. Thus, our decision will relate to whether appellant's claim is time barred pursuant to the statute.

32

for the O&A work (and the impacts that flowed from the work) also could not possibly have been fixed until that MDR was ordered/approved." (App. opp'n and mot. at-28; *see also* 26-30)

Lockheed Martin also compares its factual situation to that of *Gray Personnel* (app. opp'n and mot. at 28-30). In the latter appeal, the Board held that the claim did not accrue until "performance was required"; we determined that the continuing claims doctrine applied after the government issued a series of delivery orders that effectively changed the contract (*Gray Personnel*, 06-2 BCA ¶ 33,378 at 165,477). Appellant contends "a similar rationale" was used in *DynCorp Int'l LLC*, ASBCA No. 56078, 09-2 BCA ¶ 34,290, in which the Board determined that a continuing claim accrued when the government exercised contract options. According to LMA, "[t]he rationale in *Gray Personnel* and *DynCorp* applies with equal force in the instant appeal," because the Board has accepted the doctrine "based on events without which there could have been no Government liability for impacts to the later time periods (*i.e.*, orders or option periods)." It maintains that, similarly, "no O&A performance was required of Lockheed Martin without the Government's approval of an MDR and no liability could have fixed but for the Government's direction." (App. opp'n and mot. at 29-30)

In addition to overall objections that Lockheed Martin failed to demonstrate undisputed material facts (*see generally* gov't reply, *passim*, and gov't opp'n, *passim*), the government opposed appellant's 3rd through 6th cross-motions by contending the contractor improperly asserted a "new" claim and denying there was a "continuing claim" that would "save 'distinct' parts of its certified claim from being time-barred by the CDA" (gov't reply at 5; *see also* 6-9). We have considered and rejected the government's "new claim" argument in § III.B, *supra*. We address the government's assertions that LMA has not met its burden of proof with respect to establishing application of the continuing claim doctrine (*see* gov't reply at 5-7) in detail below.

### *Decision on Appellant's 3rd Cross-Motion for Summary Judgment*

We grant Lockheed Martin's 3rd cross-motion for summary judgment, and find that each relevant MDR approved by the government on or after October 15, 2012 qualifies as a separate and distinct claim event pursuant to the continuing claim doctrine. The government failed to established triable facts, or to overcome appellant's legal argument.

### A. *Lack of Appellate Precedent Does Not Impede the Board's Jurisdiction*

We begin with the government's assertion that appellant "does not cite any Federal Circuit decision applying the 'continuing claim doctrine" (*see* gov't reply at 5). To the extent the government intends to argue that any paucity of such decisions by our appellate court is a problem, we disagree that this impedes our jurisdiction or

authority to decide this motion (or other matters that rely on the continuing claims doctrine).

Although it is always valuable to have precedent beforehand from our appellate tribunals, which are the United States Court of Appeals for the Federal Circuit and the United States Supreme Court, the government cites no authority for the proposition that it is necessary that the Board await such rulings (*see* gov't reply at 5-6) before deciding matters that are properly before us. This is particularly the case where - as here - the ASBCA has a robust line of precedent on the issue. *See*, *e.g.*, *Gray Personnel*, 06-2 BCA ¶ 33,378; *ASFA Int'l Constr. Indus. and Trade, Inc.*, ASBCA No. 57880, 14-1 BCA ¶ 35,736; *DynCorp*, 09-2 BCA ¶ 34,290; and related decisions. As the Board has observed, "Although the continuing claim doctrine found its genesis in pay cases, it potentially applies to contract cases as well. *See*, *e.g.*, *Aktiebolaget Bofors v. United States*, 153 F. Supp. 397 (Ct. Cl. 1957)." *Gray Personnel*, 06-2 BCA at 165,477; *see also DynCorp*, 09-2 BCA at 169,407 (The Board "believe[s] the claim is subject to the continuing claim doctrine which we have determined to have application to government contract cases.")

We find no merit to the government's suggestion that the ASBCA is required to await appellate precedent before deciding a matter within our jurisdiction, particularly where we apply a legal theory that has been accepted by the Federal Circuit (and its predecessor forum) in multiple factual situations.

B. *The Government Errs Regarding the Standard Proof for the Continuing Claim Doctrine*

Although the government asserts that appellant failed to prove it had a continuing claim, the former's argument is based upon an incorrect interpretation of Lockheed Martin's burden of proof under this doctrine.

1. *The Continuing Claim Doctrine Does Not Require "Specifically Identifiable 'Damages'" for Each Claim Event*

According to the government, the Board's decision in *Gray Personnel* articulated the requirement of "<u>specifically identifiable 'damages'</u> to the contractor from each distinct 'change,' that could be found included in the certified claim on appeal to the Board under the CDA" (gov't reply at 6) (underlining added). However, the government does not accurately cite the standard of proof set forth in *Gray Personnel*, which was the first decision to rely upon the continuing claim doctrine in a CDA appeal before the Board. The ASBCA found the continuing claim doctrine was appropriately invoked for claims that are "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Gray Personnel,* 06-2 BCA at 165,477 citing *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997),

which in turn cited *Friedman v. United States*, 310 F.2d 381, 384 (1962).

The government's assertion that each continuing claim event or wrong must have "specifically identifiable damages" differs from the requirement of "associated damages" that is set forth in *Gray Personnel*. The government does not cite any other decision or authority to support this assertion. Insofar as the government's contentions here, our determination that LMA's claim arose from multiple events is not defeated even if appellant "cannot even identify a single hour of the 428,482 claimed 'production hours' allegedly caused by any identifiable MDR and the number of O&A hours related thereto" (gov't reply at 7) (emphasis omitted).

We decline to adopt the government's heightened and unsupported standard for damages under the continuing claim doctrine. Although not clearly labeled as such, this argument appears to be an effort by the government to preclude (or at least make far more difficult) LMA's reliance on the measured mile legal theory.

2. *The Continuing Claim Doctrine Does Not Require a "Wrong" or "Unilateral" Government Action*

Among the governments other criticisms of Lockheed Martin's reliance on the continuing claim doctrine is the suggestion that a "wrong" is necessary for that doctrine to apply. Additionally, the government maintains that the "events" or "wrongs" in *Gray Personnel* and *DynCorp* involved "<u>unilateral</u>" government action (gov't reply at 5-6) (underlining added by the government). If the government intended to say that these ASBCA decisions somehow stand for the proposition that "unilateral" government action is necessary for the continuing claim doctrine to apply, this argument was inadequately developed.

The government is not required to have committed a "wrong" under the doctrine, although that might have been the case. As the courts and Board repeatedly have said, <u>either</u> an "event" <u>or</u> a "wrong" may form the basis for a continuing claim; *see, e.g.*, *Gray Personnel*, 06-2 BCA at 165,477 (citing *Aktiebolaget Bofors v. United States*, 153 F. Supp. 397 (Ct. Cl. 1957)) (underlining added).

In the instant appeal, the facts as alleged by both parties show neither a "wrong" nor a "unilateral government" action (*see, e.*g., gov't mot., *passim*; app. opp'n and mot., *passim*). The contract between Lockheed Martin and the government anticipated there could be changes that might entitle LMA to an equitable adjustment for additional "over and above" work if the government deemed the work necessary; *see, e.g.*, SOF ¶¶ 3, 9, 11-13 regarding the H106 clause and the contract's two "changes" clauses. The government's compliance with provisions to authorize additional work by approving MDRs was a contractually-permissible "event" and not a "wrong" that might or might not entitle the contractor to recovery.

3.  *The Concept Underlying the Continuing Claim Doctrine*

The concept of a continuing claim was developed for those situations in which the claim is susceptible to being broken down into a series of discrete events, each with its own accrual date.  Qualified claim events within the statutory period survive, even if those which arose prior to that point do not.  Continuing claims, which arise from multiple, related events (also "wrongs"), can be distinguished from those that are rooted in a single event.  In the latter, jurisdiction exists even if the resulting harm continues so long as that single event occurred within the statutory period.  The "continuing claim" legal theory did not originate with the Board, but arose from substantial appellate precedent which we follow.

As the ASBCA has explained:

> Under the "continuing claim" doctrine, portions of the claim within the statutory limitation period can survive although the statute of limitations has lapsed for earlier events.  *Ariadne Financial Servs. Pty. Ltd. v. United States*, 133 F.3d 874, 879 (Fed. Cir. 1998).  For [a party's] claim to be a continuing claim, the claim "must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages."  Furthermore, "a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim."  *Gray Personnel*, 06-2 BCA ¶ 33,378 at 165,476-77 (citing *Brown Park Estates-Fairfield Development v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997)).

*ASFA*, 14-1 BCA ¶ 35,736 at 174,909 (underlining added).

One-time claim events that cause a "single harm," even though the ill effects may recur, do not meet the test for a continuing claim.  In *Brown Park Estates*, which is relied upon in *Gray Personnel* (*see* 06-2 BCA at 165,476-77), the court gave the example of a military retiree who elected not to participate in a survivor benefit plan and whose widow was not given certain benefits she would otherwise have received.  Even though the widow, whom the government failed to inform regarding her husband's choice, was adversely affected as a consequence and argued there was a continuing claim, the court disagreed.  It determined there was only "one alleged wrong by the government, which accrued all at once at one point in time, even though it may have had later adverse effects."  The disappointed widow's claim would have been timely had it been brought within the requisite period from her husband's election, but it was not.  *Brown Park Estates*, 127 F.3d at 1456-57 (citing *Hart v. United States*, 910 F.2d 815, 816 (Fed. Cir. 1990)).

## *Conclusion*

As appellant has established there were no disputed material facts, and that favorable judgment is warranted on the grounds presented, we sustain LMA's 3rd cross-motion for summary judgment. Lockheed Martin's claim is timely to the extent that it is based upon MDRs that the government approved on or after October 15, 2012. We agree that the continuing claim doctrine applies; the government's inexactitude regarding the contractor's burden of proof was unhelpful, and we decline to adopt the requirements urged.

The government's approvals of a series of MDRs represent the type of single-topic (*i.e.*, authorization of additional O&A work) yet repeated and distinct events that the continuing claim doctrine contemplates. Lockheed Martin could not have known until the government gave these approvals whether it was required to perform O&A work it considered beyond the scope of the contract, nor was the government liable for any work the contractor undertook absent that direction.

VII. *Lockheed Martin's 4th through 6th Cross-Motion for Summary Judgment*

Lockheed Martin's 4th through 6th cross-motions for summary judgment are offered to provide alternative bases for jurisdiction (app. opp'n and mot. at 7), just in case "the Board were to disagree that the entirety of [its] claim is timely under the Continuing Claims Doctrine on the basis of MDR orders (Cross-Motion #3)" (*id.* at 31).

LMA's 4th cross-motion (app. opp'n and mot. at 30-33) asserts that appellant "could not identify the extent of the need for legacy repairs on a particular aircraft before an aircraft was actually inducted" (*id.* at 30). It argues that "Lockheed Martin's claims for impacts associated with aircraft P-15 to P-27 – which were inducted after 15 October 2012 and within six years of Lockheed Martin's 15 October 2018 claim – are timely under the Continuing Claims Doctrine" (*id.* at 33). Appellant contends in its 5th cross-motion (*id.* at 33-35) that it's "claims must be timely to the extent that they relate to Lot 5 aircraft," because that work was not authorized until after October 15, 2012. It says that "[u]ntil the Government exercised its options for Lot 5 O&A work and for the Lot 5 install work," each of which took place after October 15, 2012, "the Government could have no liability and Lockheed Martin could have no claim" (*id.* at 35). LMA's 6th cross-motion (*id.* at 35-38) asserts its claim is timely because "the Government exercised the option [of the] T&M O&A CLIN for Lot 5 on 20 December 2012 and awarded the CPFF O&A CLIN for Lots 3, 4, and 5 on 25 April 2013 – less than six years before Lockheed Martin submitted its claim on 15 October 2018" (*id.* at 37).

In this decision (*see* §§ V-VI, *supra*), we granted LMA's 2nd and 3rd cross-motions, and found that the contractor's October 15, 2018 claim was timely filed. We found further:

37

(1) under the continuing claim doctrine, appellant's claim arose from separate and distinct events that took place on or between October 15, 2012 and October 15, 2018; (2) these events were the government's approvals of a series of MDRs that required Lockheed Martin to perform additional O&A work; (3) appellant's claim accrued with each of these approved MDRs, as the contractor neither knew nor could have known until then whether and what further work was required by the government; (4) to the extent that LMA's claim for recovery is predicated on MDRs approved on or after October 15, 2012, it is within the statutory period established by the CDA; and (5) appellant's awareness prior to October 15, 2012 that the aircraft were requiring additional O&A repair work did not cause it to "know" (or mean that it "should have known") that its October 15, 2018 claim accrued more than six years before it was submitted to the CO.

We have agreed with Lockheed Martin that its claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs" (*see Gray Personnel,* 06-2 BCA at 165,477). Because we find that the "distinct events" that comprise the claim are the MDRs that were approved by the government on or after October 15, 2012, it is unnecessary that we decide Lockheed's alternative 4th through 6th cross-motions and we decline to do so.

We regard these motions as informative to the extent that appellant established material facts relating to relevant contract actions. For example, in findings relevant to its 4th cross-motion, LMA established that aircraft P-12 though P-27, which are the subject of its claim, were inducted after October 15, 2012 and were not the subject of MDRs prior to that date (*see*, *e.g.*, SOF ¶¶ 14-17; *see also* app. opp'n and mot. at 30-33; gov't opp'n at 16, 23). Appellant's 5th cross-motion similarly shows that the Lot 5 option was not exercised until after October 15, 2012 (*see* SOF ¶¶ 10-11; *see also* app. opp'n and mot. at 33-35; gov't opp'n at 17). In like vein, undisputed material facts from Lockheed Martin's 6th cross-motion demonstrate that "the Government exercised the option T&M O&A CLIN for Lot 5 on 20 December 2012 and awarded the CPFF O&A CLIN for Lots 3, 4, and 5 on 25 April 2013," which is "less than six years before Lockheed Martin submitted its claim on 15 October 2018" (*see* app. opp'n and mot. at 35; *also* gov't opp'n at 17-19, 23 and SOF ¶¶ 10-11).

## CONCLUSION REGARDING THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

The Board has considered all arguments advanced by the parties, whether discussed in detail or not. The government's motion for summary judgment is denied, as is appellant's 1st cross-motion for summary judgment. We grant Lockheed Martin's 2nd and 3rd cross-motions and find that its claim is timely to the extent that it is based upon MDRs approved on or after October 15, 2012. It is unnecessary that the

Board decide appellant's 4th through 6th cross-motions, which were stated as alternative bases for summary judgment in the event that its prior motions were denied.

Dated: April 13, 2022

REBA PAGE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62209, Appeal of Lockheed Martin Aeronautics Company, rendered in conformance with the Board's Charter.

Dated: April 13, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals